## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MERRITT HAWKINS**<br>**& ASSOCIATES, LLC** | § <br> § <br> § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **LARRY SCOTT GRESHAM**<br>**AND BILLY BOWDEN,** | § <br> § <br> § | |
| **Defendants.** | § <br> § | |

### PLAINTIFF'S ORIGINAL COMPLAINT
### AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE COURT:

Plaintiff Merritt Hawkins & Associates, LLC ("MHA" or "Plaintiff") hereby files this its Original Complaint and Application for Injunctive Relief ("Complaint") against Defendants Larry Scott Gresham ("Gresham") and Billy Bowden ("Bowden") (each, a "Defendant" and collectively, the "Defendants") and states:

### PRELIMINARY STATEMENT

Plaintiff MHA seeks a preliminary injunction and permanent injunctive relief because Defendant Gresham, a former Search Consultant for MHA, has violated the Computer Fraud and Abuse Act, as well as his other common law, contractual and statutory obligations to Plaintiff. For example, Plaintiff recently discovered that Gresham – who terminated his employment to begin working for a direct competitor of MHA and/or its affiliated companies in direct violation of his Employment Agreement – surreptitiously accessed MHA's computers and/or computer network, without authorization, and apparently copied hundreds of MHA's computer files and other

electronically-stored information to a USB drive just hours before turning in his formal resignation to MHA. Further, it appears that Gresham attempted, with some success, to delete and destroy evidence of his illegal actions. Moreover, upon information and belief, Gresham was recruited to terminate his employment with MHA by Defendant Bowden, in direct contravention of Bowden's own contractual obligations to MHA. In these circumstances, injunctive relief is necessary to prevent further irreparable harm to Plaintiff's misappropriated confidential information and/or to prevent further violation of the Defendants' Employment Agreements.

## PARTIES

1.      Plaintiff Merritt Hawkins & Associates, LLC is a California limited liability company with its principal place of business located at 5001 Statesman Drive, Irving, TX 75063. MHA is registered to do business as a foreign entity in the State of Texas.

2.      Defendant Gresham is an individual citizen of the State of Texas who is located in and resides in the State of Texas. Gresham may be served at his home address of 824 Kilbridge, Coppell, Texas 75019 or wherever else he may be found.

3.      Defendant Bowden is an individual citizen of the State of Texas who is located in and resides in the State of Texas. Bowden may be served at his home address of 11512 Jasper Drive, Frisco, Texas 75035 or wherever else he may be found.

## JURISDICTION

4.      This action arises under 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act), 28 U.S.C. §2201 and federal common law.

5.      Subject matter jurisdiction is in this Court pursuant to 28 U.S.C. § 1331 based upon Plaintiff's claim under the Computer Fraud and Abuse Act.  Jurisdiction is further proper for any additional causes of action pursuant to 28 U.S.C. § 1367.

## VENUE

6.      Venue is proper in the United States Court for the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred in this division and district and/or one or more of the Defendants resides in this division and district.  Moreover, the Defendants Employment Agreement(s) specifically states that it is performable, in part, in Irving (which is located in Dallas County), Texas.

## CONDITIONS PRECEDENT

7.      Any applicable conditions precedent have been performed and/or have occurred.

## FACTS

### The Business of Plaintiff MHA

8.      MHA is part of a family of companies that provide various forms of temporary (locums) and permanent staffing services to the medical industry.  Plaintiff's clients range from large medical organizations to small and mid-size regional organizations.   More specifically, MHA matches physicians and other healthcare professionals in all specialties on permanent basis with a variety of healthcare organizations, including hospitals, medical groups, occupational medical clinics, individual practitioners, networks, psychiatric facilities, government institutions and managed care entities and/or through contract management groups.

9.     The medical staffing industry is highly competitive, and therefore, Plaintiff's ability to offer premium services and highly skilled health care providers at competitive rates is essential to its viability and continued success.

**Plaintiff MHA's Confidential Information**

10.     Also critical to Plaintiff MHA's continued success is its confidential and proprietary documents and information which include, but are not limited to: (1) the identity of Plaintiff's customers, clients, healthcare providers, contacts and prospects, as well as the particular people employed by Plaintiff's clients with whom Plaintiff deals (i.e. – the client contact people); (2) the business, finances and special needs of Plaintiff, its customers, clients, contacts, and prospects; (3) Plaintiff's policies and procedures; (4) Plaintiff's compensation plans and employee benefits; (5) confidential market studies; (6) pricing studies, information and analyses; (7) current and prospective business projections; (8) business plans and strategies; (9) non-public financial statements and information of Plaintiff, its clients and medical professionals with whom Plaintiff work; (11) methods of bidding, bids to customers, clients and prospects and profit margins; (12) unique software programs and databases developed by Plaintiff including, but not limited to, all computer disks, slides, files, manuals, or other information pertaining to such software programs and databases; and (13) information regarding its employees' performance, compensation, skill sets and the confidential information known by the employees (collectively, Plaintiff's "Confidential Information").

11.     Plaintiff's Confidential Information was developed by Plaintiff, is continually updated by Plaintiff, and undeniably constitutes one of Plaintiff's most valuable assets.

12.     As such, Plaintiff takes reasonable and adequate measures to protect its Confidential Information, such as keeping it stored on a secure, password-protected network and/or premises.   Plaintiff further requires its employees – including both Bowden and Gresham (as set forth more fully below) – to sign employment agreements (the "Employment Agreements"), which reasonably restrict such employees both during and after termination of their employment from, among other things: (a) soliciting Plaintiff's employees, (b) working for a direct competitor of MHA within the "Restricted Territory," and/or (b) using, disclosing and/or keeping Plaintiff's Confidential Information.

13.     These Employment Agreements, specifically Articles IV and/or Section 2 (the "Non-Disclosure Provision(s)"), Article VII and/or Section 5 (the "Non-Competition Provision(s)") and Article VIII and/or Section 5 (the "Non-Interference Provision(s)"), which are set forth in pertinent part below, state:

### ARTICLE IV – CONFIDENTIAL INFORMATION

a:  The Employee will be trained by MHA in the capacity of a[n] Search Consultant or [sic] and will have access to and develop confidential information relating to the exact names and contacts of clients of MHA, the fees charged by MHA, and sales techniques unique to the success of MHA.

b:  In addition, the Employee further acknowledges that the Confidential Information received through training and employment by MHA will enable the Employee to cultivate the loyalty and good will of MHA clients or customers and will enable the Employee to develop close, personal relationships with MHA clients. The Employee agrees that Confidential Information documented in MHA files, records, and documents is the property of MHA and agrees that the Employee shall not, without the prior written consent of MHA, disclose or make available to any person, or use directly or indirectly, any of such

Confidential Information, except in connection with the performance of the Employee's employment by MHA

...

d:  The Employee acknowledges and agrees that this non-disclosure obligation shall survive any termination of this Agreement and shall be fully enforceable by MHA or its successor or assignee subsequent to the termination of the Employee's employment, regardless of the reason for such termination.

e:  For purposes of the Agreement, the term "Confidential Information" shall be defined as information in the possession of, prepared by, obtained by, or compiled by MHA which is not generally available to the public. "Confidential Information" shall include, but is not limited to, information pertaining to: (i) the identity of MHA customers, clients, healthcare providers, contacts and prospects; (ii) the business, finances and special needs of MHA, its customers, clients, contacts, and prospects; (iii) MHA policies and procedures; (iv) MHA compensation plans and employee benefits; (v) confidential market studies; (vi) pricing studies, information and analyses; (vii) current and prospective business projections; (viii) business plans and strategies; (ix) [non-public] financial statements and information; (x) special processes, procedures and services of MHA; (xi) methods of bidding, bids to customers, clients and prospects and profit margins; and (xii) unique software programs and databases developed by MHA including, but not limited to, all computer disks, slides, files, manuals, or other information pertaining to such software programs and databases.  The Employee acknowledges and agrees that this information, if disclosed, could place MHA at a competitive disadvantage.

## ARTICLE VIII – NON-INTERFERENCE

The Employee agrees that, for a period of thirty-six (36) months subsequent to the termination of this Agreement, whether such termination occurs at the insistence of MHA or the Employee, the Employee shall not solicit or recruit directly or by assisting others, any other employees of MHA, its parent companies, subsidiary companies, affiliated companies, successors or assigns, nor shall the Employee contact or communicate with any other employees of MHA, its parent companies, subsidiary

companies, affiliated companies, successors or assigns, for the purpose of inducing other employees to terminate their employment with MHA, its parent companies, subsidiary companies, affiliated companies, successors or assigns. For the purposes of this covenant, "other employees" shall refer to employees who are still actively employed by, or doing business with, MHA, or any of its parent companies, subsidiary companies, affiliated companies, successors or assigns, at the time of the attempted recruiting or hiring. The Employee acknowledges and agrees that this non-interference agreement shall survive any termination of the Agreement and shall be fully enforceable by MHA or its successor or assignee subsequent to the termination of the Employee's employment, regardless of the reason of such termination.

## SECTION 2 – CONFIDENTIALITY

Employee covenants and agrees that he/she will not use any of the Confidential Business Information, Company Training or Company Relationships for any purpose other than in the course and scope of his/her employment and for the exclusive benefit of the Company…Employee also agrees to take all steps necessary, and all steps requested to ensure that the Confidential Business Information, Company Training and Company Relationships are kept secret and confidential and for the sole use and benefit of the Company…further agrees that the disclosure of any Confidential Business Information, Company Training and Company Relationships of the Company, both during and after his/her employment or use of any Confidential Business Information, Company Training and Company Relationships for Employee's own benefit would constitute a breach of this Agreement.

## SECTION 5 – NON-COMPETITION

During the term of Employee's employment with the Company and for a period of twelve (12) months after the termination of Employee's employment with the Company for any reason, Employee agrees that he/she will not, within the Restricted Territory, perform services of the same, similar or greater nature to those performed by Employee for the Company, for any person, entity or venture which competes with the business of the Company

(which business includes recruiting and providing temporary and permanent healthcare professionals, placements and other staffing services to healthcare professionals, healthcare facilities and other healthcare organizations). For purposes of this covenant, the Restricted Territory is defined as Dallas, Texas, and all counties adjacent to <u>Dallas County, including counties of Collin, Denton, Ellis, Hunt, Johnson, Kaufman, Rockwall, and Tarrant.</u>

14.    Notably, the Non-Disclosure Provision(s) in the Employment Agreements have no expiration date; upon termination of the employment relationship, an employee is obligated to maintain the confidentiality of any Confidential Information such employee obtained as a result of their employment with MHA.

15.    The Non-Competition Provision(s) are effective for only one year and/or 12 months from the date the employment relationship is terminated and precludes the former employee from going to work for a direct competitor of MHA anywhere within the defined "Restricted Territory" (the former employee is not prohibited from working outside the "Restricted Territory"). The Non-Interference Provision(s) meanwhile remain in effect for three years and/or 36 months from the date the employment relationship is terminated and prohibits a former employee from soliciting and/or recruiting MHA's and/or its affiliated companies employees.

16.    In addition to the other terms and conditions contemplated by the Employment Agreements, Article VI and/or Section 4 of the Employment Agreements (the "Termination of Employment Provision(s)") recites that upon termination of the employment relationship, an employee is obligated to return any and all of Plaintiff's Confidential Information:

## ARTICLE VI – TERMINATION OF EMPLOYMENT

In the event that this Agreement is terminated for any reason, the Employee agrees he/she shall, prior to the effective date of termination, return any and all records; files; documents; materials; copies; equipment; literature; data; information; audio or videotapes; slides; computer disks, files or information; software programs; order forms; memoranda; correspondence; customer lists or information; prospect lists or information; financial statements or other information pertaining to [MHA] its customers, clients, contacts or prospects; agreements; contracts; orders; records; policy or procedure manuals; memoranda; and/or any cards or notes acquired, compiled or coming into the Employee's knowledge, possession or control in connection with his/her activities as an employee of [MHA], as well as machines, parts, equipment, or other materials received from [MHA] or from any of its customers, clients or prospects in connection with such activities.

## SECTION 4 – RETURN OF DOCUMENTS

Employee acknowledges that all documents, records and materials that he/she prepares, and Confidential Business Information, Company Training and Company Relationships that he/she may have access to, may be given or entrusted to him/her, may develop, or he/she may acquire knowledge of in the course of his/her employment are and shall remain the sole property of Company…In the event that Employee's employment terminates for any reason, or upon demand, Employee agrees to immediately return or turn over all Confidential Business Information, Company Training and information about Company Relationships (and any copies thereof regardless of the format) in his/her possession, custody or control, as well as any documents, records, notes, or other work product, materials, information and other property in his/her possession, custody or control which is in any way connected with or derived from his/her services to, or affiliation with, Company.

17.     In exchange and/or in consideration of the above-referenced covenants, Plaintiff, among other things, provides its employees, with training and constant and continual access to Plaintiff's Confidential Information.

## Defendants' Employment Agreements and Unlawful Conduct

18.     Defendant Bowden began working for MHA on April 28, 2008.  His employment with MHA ended approximately two years later on September 7, 2010.

19.     At the time his employment with MHA ended, Bowden served as a Search Consultant.  His job responsibilities as a Search Consultant included, but were not limited to, the recruitment of medical specialists, selling of services to clients, and account management of new and current business either on the permanent or contract side of the business.

20.     As a condition of his employment with MHA, Bowden signed an Employment Agreement (the "Bowden Agreement") that contained the Non-Disclosure, Non-Interference and Termination of Employment Provisions cited in Articles V, VI and VIII above.  A true and correct copy of the Bowden Agreement is attached hereto as **Exhibit A**.

21.     Pursuant to the terms of the Bowden Agreement, the Non-Disclosure provision in the Bowden Agreement has no expiration date and continues in perpetuity. Meanwhile, the Non-Interference provision – which again expressly prohibits Bowden from contacting or communicating with any other employees of MHA for the purpose of inducing them to terminate their employment with Plaintiff – remains in effect until, at least, **September 7, 2013**.

22.     Upon information and belief, in direct violation of the Non-Interference Provision, Bowden, in or around the fall of 2012, approached Defendant Gresham – who was at the time an employee of MHA – to discuss the possibility of Gresham terminating his employment with MHA and joining Bowden in working for a direct competitor of MHA and/or its affiliated companies.

23.     At the time he was approached by Bowden, Defendant Gresham was similarly employed by MHA as a Search Consultant.  And just as with Bowden, as a condition of his employment, Gresham had signed an employment agreement.

24.     Gresham's agreement entitled Confidentiality, Non-Competition and Non-Solicitation Agreement, (the "Gresham Agreement") contains Non-Disclosure, Non-Competition, Non-Interference and Termination of Employment Provisions virtually identical to those in Bowden's Agreement (see Sections 2, 4 and 5 cited above).  A true and correct copy of the Gresham Agreement is attached hereto as **Exhibit B**.

25.     Notably, at the time of improperly contacting Defendant Gresham, Defendant Bowden had direct knowledge and/or was otherwise on notice of each of the restrictions and provisions contained in Defendant Gresham's Agreement, as Bowden has the same and/or virtually identical provisions in his own agreement with MHA.

26.     Upon information and belief, as a result of Defendant Bowden's improper solicitation and/or interference, Defendant Gresham voluntarily terminated his employment with MHA on Monday, September 24, 2012.

27.     Indeed, at approximately 7:00AM on Monday, September 24, 2012, Defendant Gresham emailed his direct supervisor Timothy Beidle ("Beidle") advising that effective immediately he was resigning from MHA.  Notably, Gresham represented

to Beidle that he was leaving the medical staffing industry as his "heart and mind ha[d] not been focused solely on physician recruiting" and he had received an offer that would provide him with a new and exciting endeavor. A true and correct copy of Gresham's resignation email is attached hereto as **Exhibit C**. Pursuant to the terms of the Gresham Agreement, the Non-Competition Provision – which again expressly prohibits Gresham from working for a director competitor in the Restricted Territory – thus remains in effect until, at least, **September 24, 2013**.

28.     At the time of his resignation, as a routine matter, MHA's IT department took possession of Gresham's MHA computer.

29.     MHA shortly, thereafter, learned that Gresham's representation (that he was leaving the medical staffing industry) was a blatant falsehood; and that, in fact, he had terminated his employment with MHA, and on that same day – again upon information and belief at the solicitation of Bowden – become employed by Consilium Staffing, LLC ("Consilium"), a direct competitor of Plaintiff MHA and/or its affiliated companies.

30.     Consilium, whose offices are a few mere miles from MHA's offices within the Restricted Territory, expressly represents itself to be doing business and/or making both temporary and permanent medical staffing placements. Specifically, Consilium's website states "[o]ur staffing professionals make it their top priority to match you with *temporary and full-time positions* that help you build towards the career you've always envisioned." (emphasis added). Further Consilium's FAQ page includes, in pertinent part, the following statement:

**Does Consilium Staffing offer candidates for Permanent Placement?**

**YES.** Consilium specializes in locum tenens placement, however through our recruiting efforts we speak with hundreds of providers every day, and it is not uncommon for us to find candidates who are looking for more of a long-term, or permanent position, as opposed to locum tenens...

31.     Based upon Consilium's own representations, Consilium is undeniably a direct competitor of MHA.

32.     Subsequent to Gresham's resignation, MHA discovered that Gresham advised a fellow MHA co-worker during the week prior to his resignation that (i) he was contacted by Bowden and had conversations with Bowden about terminating his employment to work for Consilium (who again by its own admission is a direct competitor of MHA), (ii) he had already interviewed on several occasions with Consilium, (iii) Consilium had made him an offer of employment, and (iv) he was considering and/or planning on taking the offer.

33.     After making this discovery, MHA initiated a review of Gresham's MHA email, computer and physical access activity.  During this review, MHA discovered that just hours before formally tendering his resignation on Monday morning, Gresham had accessed MHA's offices (on Sunday, September 23, 2012 outside of normal business hours) using his MHA security badge.  Upon information and belief, at the time of such access, Gresham had already accepted the offer of employment with Consilium and/or decided to terminate his employment with MHA.  MHA also learned through this review that all of Gresham's "home directory" files were missing.

34.     The after-hours access and missing files prompted MHA to investigate further and to engage a forensic computer expert to more closely analyze Gresham's activities.

35.     Plaintiff's forensic computer expert discovered extraordinary activity by Gresham on Plaintiff's computer and/or computer network.

36.     Plaintiff's forensic computer expert determined that after accessing MHA's offices using his MHA security credentials on Sunday, September 23, 2012, Gresham proceeded to utilize his unique MHA passwords to log onto Plaintiff's computer and/or computer network.

37.     Upon information and belief, Gresham remained on MHA's premises (and computer/computer network) for a period of several hours on that Sunday, September 23, 2012, beginning at approximately 4:00 PM.

38.     During this time, Gresham mass-accessed and is believed to have downloaded for himself in excess of four-hundred (400) files from Plaintiff's computer and/or computer network.  By way of example, MHA has learned that Gresham accessed the following confidential and proprietary information:  (1) call scripts, (2) doctor and/or healthcare provider curriculum vitae and/or references, (3) interview letters, (4) hospital profiles, (5) letters of agreement and/or offer, and (6) client worksheets and/or write-ups.

39.     Upon information and belief, Gresham copied of all these documents to his own personal USB drive.

40.     Gresham had no legitimate reason to access and/or copy these files on Sunday, September 23, 2012.

41.     Notably, Gresham did not make any effort to return any of this Confidential information to MHA upon his resignation or to otherwise notify MHA that he was in possession of such Confidential Information (as specifically required by the Termination of Employment Provision of his Employment Agreement).

42.     Plaintiff's expert has further determined that, not only did Gresham, wrongfully access, copy and then take Plaintiff's Confidential Information for himself (without disclosing same), but Gresham also contemporaneously (on that Sunday, September 23, 2012) attempted to hide his access/theft by deleting the entirety of his "home directory".  Gresham's home directory was comprised of well over five-hundred (500) files and includes, but is not limited to, files which he mass-accessed.

43.     Gresham then further proceeded to delete all of those files on his Desktop and/or in his My Documents folder.  Indeed, it appears that Gresham "drug" the contents of his Desktop and My Documents folders into his Recycle Bin, in essence executing a mass delete function/command.  MHA has been able to recover over three hundred (300) deleted file names from Gresham's Recycle Bin, many of which on their face constitute Plaintiff's Confidential Information.

44.     Upon information and belief, Gresham may have copied (electronically or in print) a number of these Recycle Bin files prior to deleting them.

45.     Gresham had no legitimate reason to delete these files on Sunday, September 23, 2012.

46.     Again, Plaintiff's Confidential Information is a critical asset, not made publicly available, and which was shared with Defendant Gresham (and Defendant Bowden for that matter) only after their written assurances – the execution of the

aforementioned Employment Agreements. Beyond having Defendants sign the Employment Agreements, Plaintiff took additional measures to keep its Confidential Information secret, such as keeping it stored on a secure, password-protected network, with physical access to the premises limited to those persons with appropriate security credentials.

47.     The information set forth herein, undeniably shows that Defendants have breached their Employment Agreements with MHA by using Plaintiff's Confidential Information, by soliciting Plaintiff's employees and/or by improperly accepting employment from a director competitor in the Restricted Territory.

### FIRST CLAIM FOR RELIEF—VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (AGAINST DEFENDANT GRESHAM)
#### 18 U.S.C. §1030

48.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

49.     The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

50.     Defendant Gresham before and/or at the time of his departure and the dissolution of his employment relationship with MHA, knowingly and intentionally accessed, deleted, downloaded, copied, took, and/or stole Plaintiff's confidential business and proprietary information and trade secrets, without authorization, from Plaintiff's computers and/or computer network.

51.     Plaintiff's computers and computer systems are "protected computers" as that term is defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication in the course of Plaintiff's business.

52.     Again, Defendant Gresham intentionally accessed Plaintiff's computer network without authorization and/or exceeded his authorized access, and thereafter accessed information before deleting and/or otherwise destroying information from a protected computer in violation of, among others, 18 U.S.C. § 1030(a)(2)(c).

53.     As a result of Defendant Gresham's conduct, Plaintiff has suffered damage to its computers and business, including specifically impairment of the integrity and/or availability of data and/or information in Plaintiff's computers in an amount which shall be determined at trial.

54.     As set forth above, Defendant Gresham's conduct has resulted in damages totaling in excess of $5,000.00, incurred in the course of Plaintiff's investigation and data recovery, including specifically repair and recovery of deleted computer files and other components.  Pursuant to the statute, the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. *See Quantlab Tech, Ltd., v. Godlevsky*, 719 F.Supp.2d 766, 776 (S.D. Tex. 2010).  Here, Plaintiff, at a minimum, is entitled to recover the damages incurred as a result of its investigation and data recovery efforts.

55.     Moreover, upon information and belief, Plaintiff has suffered further injury and harm in the loss of its confidential business and proprietary information and

trade secrets which were misappropriated by Defendant Gresham. As Plaintiff's data recovery efforts remain ongoing it is currently unable to state the full extent of such loss/misappropriation.

56.     In addition to the aforementioned damages, Plaintiff also seeks injunctive relief to: enjoin Defendant Gresham's continued and/or future use and misappropriation of Plaintiff's confidential business and proprietary information and trade secrets and for the return of Plaintiff's confidential business and proprietary information, which such relief is more fully described below.

## SECOND CLAIM FOR RELIEF—HARMFUL ACCESS BY COMPUTER
## (AGAINST DEFENDANT GRESHAM)

57.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

58.     Defendant Gresham is liable to Plaintiff under Texas Civil Practice & Remedies Code § 143.001, *et. seq.* in that Plaintiff and/or Plaintiff's property has been injured as a result of a violation under Chapter 33 of the Penal Code. Defendant Gresham knowingly and intentionally accessed Plaintiff's computer, computer network and/or computer system without the effective consent of Plaintiff.

59.     As a result of Defendant Gresham's conduct, Plaintiff has suffered damages, including impairment of the integrity and/or availability of data and/or information in Plaintiff's computers, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF—CONVERSION
## (AGAINST DEFENDANT GRESHAM)

60.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

61.     Defendant Gresham, without authorization or consent, has wrongfully accessed and used computer files and/or data belonging to Plaintiff.   Accordingly, Defendant has exercised dominion over Plaintiff's property in a manner that is improper and without authorization.

62.     As a proximate cause of Defendant's conversion of Plaintiff's property, Plaintiff has suffered damages within the jurisdictional limits of this court.

### FOURTH CLAIM FOR RELIEF—VIOLATION OF THE TEXAS THEFT LIABILITY ACT (AGAINST DEFENDANT GRESHAM)

63.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

64.     By taking the actions set forth herein, Defendant Gresham has violated the Texas Theft Liability Act.  Defendant Gresham unlawfully appropriated, secured, or stole Plaintiff's property with the intent to deprive the owner of the property in violation of Texas Penal Code sections 31.03 and 31.05, and such appropriation was without Plaintiff's consent.

65.     As a proximate cause of Defendant's violation of the Texas Theft Liability Act, Plaintiff has suffered harm which entitles it to actual damages resulting from the theft, as well as other damages awarded by the trier of fact not to exceed $1,000.00, costs of court and reasonable and necessary attorneys' fees incurred herein.

### FIFTH CLAIM FOR RELIEF—BREACH OF CONTRACT (AGAINST ALL DEFENDANTS)

66.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

67.     The Defendants each agreed to be bound by the terms of their respective Employment Agreements with Plaintiff MHA.

68.     Plaintiff and Defendants are parties to and/or beneficiaries of valid, enforceable contracts, the Employment Agreements.

69.     Under the terms of the Employment Agreement, the Defendants agreed, *inter alia*, not to disclose any of Plaintiff's confidential and proprietary information, as is commonly understood and as defined in those contracts, in any way other than for the benefit of Plaintiff, whether during or after their employment.  The Defendants further agreed to return all Confidential Information in their possession upon termination of their employment with MHA.

70.     Defendant Gresham also agreed not to compete with MHA within the Restricted Territory for the specific periods proscribed in the Employment Agreements.[1]

71.     The Defendants further agreed not to solicit any employee of Plaintiff (or any of their affiliated entities) for three years (36 months) following the end of their employment.

72.     MHA performed its obligations under the Employment Agreements, giving the Defendants full and unfettered access to Plaintiff's confidential and proprietary information.

73.     Nonetheless, the Defendants have breached the Employment Agreements. Specifically, Defendant Gresham has (i) improperly accessed, used and/or disclosed Plaintiff's Confidential Information, (ii) failed to return Plaintiff's Confidential Information and/or (iii) become employed and/or is working for a direct competitor of Plaintiffs (Consilium) within the Restricted Territory following the termination of his

---

[1] Plaintiffs do not bring a cause of action against Defendant Bowden for breach of the Non-Competition Provision, as the proscribed period of time has expired as it applies to him.

employment with MHA. Defendant Bowden has, upon information and belief, improperly solicited Plaintiff's employees.

74.     As a result of these breaches, Plaintiff has suffered irreparable harm and injury for which there is no adequate remedy at law.

75. Additionally, as a proximate cause of the Defendants' breaches of contract, Plaintiff has suffered substantial monetary damages within the jurisdictional limits of this Court.

## SIXTH CLAIM FOR RELIEF—BREACH OF FIDUCIARY DUTY (AGAINST ALL DEFENDANTS)

76.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

77.     As agents of MHA, and people who were placed in a position of trust and confidence at MHA, the Defendants owed MHA certain fiduciary duties both during and after their employment.

78.     The Defendants have breached one or more of their fiduciary duties to MHA by, amongst other things: (1) breaching their duty of loyalty; (2) breaching their duty of candor; (3) breaching their duty to act with integrity of the strictest kind; (4) breaching their duty of honesty and fair dealing; (5) breaching their duty of full disclosure; (6) breaching their duty to account for company property; (7) breaching their duty to refrain from competition/solicitation with Plaintiff; and/or (8) misappropriating and disclosing Plaintiff's confidential, proprietary, and trade secret information.

79.     Plaintiff has suffered irreparable harm and injury as a result of the Defendants' breaches of their fiduciary duties for which there is no adequate remedy at law.

80.     Additionally, as a proximate cause of the Defendants' breaches of their fiduciary duties, Plaintiff has suffered monetary damages within the jurisdictional limits of this court.

### SEVENTH CLAIM FOR RELIEF—THEFT, MISAPPROPRIATION, AND INEVITABLE DISCLOSURE OF TRADE SECRETS AND CONFIDENTIAL PROPRIETARY INFORMATION (AGAINST DEFENDANT GRESHAM)

81.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

82.     Defendant Gresham had access to a substantial amount of confidential, proprietary, and trade secret information of MHA and/or its affiliated companies in his position as an employee of MHA.

83.     The confidential, proprietary, and trade secret information that Defendant Gresham had access to, is not generally known outside of MHA, and because this information has great value to Plaintiff and its competitors, measures must be taken to insure that such information remains confidential.

84.     Plaintiff's confidential, proprietary, and trade secret information is the result of substantial effort by Plaintiff, and would take a competitor incalculable time and effort to duplicate.

85.     Defendant Gresham has taken or otherwise wrongfully acquired Plaintiff's confidential, proprietary, and trade secret information for his own benefit and/or the benefit of others (to the detriment of Plaintiff).   Moreover, Defendant Gresham has misappropriated Plaintiff's confidential, proprietary and confidential information for his own use or use by others as evidenced by Defendant's theft of the information.   It will be

virtually impossible for Defendant Gresham not to disclose and/or use Plaintiff's confidential, proprietary, and trade secret information.

86.     Plaintiff has not authorized the use and/or any disclosure of Plaintiff's confidential, proprietary, and trade secret information by Defendant.

87.     Plaintiff has suffered irreparable harm and injury as a result of Defendant's misappropriation and/or use of its confidential, proprietary, and trade secret information for which there is no adequate remedy at law.

88.     Additionally, as a proximate cause of Defendant's misappropriation and/or use of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff has suffered damages within the jurisdictional limits of this court.

### EIGHTH CLAIM FOR RELIEF—TORTIOUS INTEFERENCE WITH EXISTING CONTRACT AND/OR BUSINESS RELATIONSHIP (AGAINST DEFENDANT BOWDEN)

89.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

90.     Plaintiff has existing contracts or ongoing business relationships with its employees, the identities and capabilities of which were known to Defendant Bowden only as a result of his employment with MHA.

91.     Defendant Bowden willfully and intentionally interfered with an ongoing contractual and/or business relationship between MHA and its employee Scott Gresham. Such interference was/is without justification.

92.     Plaintiff has suffered irreparable harm and injury as a result of Defendant Bowden's tortious interference with contract and/or ongoing business relationship for which there is no adequate remedy at law.

93.     Additionally, as a proximate cause of Defendant's intentional interference with such contractual and/or ongoing business relationships, Plaintiff has suffered monetary damages within the jurisdictional limits of this Court.

## DAMAGES

94.     Defendants' conduct has violated their Employment Agreements; Defendant Gresham's conduct further has caused harm to Plaintiff in the form of impairment of the integrity and/or availability of data, files and/or information in or on Plaintiff's computers and/or computer networks.  Consequently, and as a direct result of Defendants' conduct, Plaintiff has been damaged.  Plaintiff requests the return of its confidential information (including specifically the USB drive) and that the confidential, propriety and trade secret information, if any, in Defendants' possession be prohibited from further use, as well as additional monetary damages (both general and special damages), including, but not limited to Plaintiff's actual and consequential damages, as well as all penalties provided the above-referenced Acts.

95.     Defendants' conduct and actions – which represent blatant and intentional breaches of their Employment Agreements – were committed with malice or with gross negligence, and therefore, Plaintiff is entitled to recover exemplary damages.

96.     Plaintiff is further entitled to recover its (i) prejudgment interest, pursuant to common law and/or the Texas Finance Code, at the maximum rate permitted by law from the date of this suit until the date of judgment, (ii) post-judgment interest at the maximum rate permitted by law from the date of judgment until the date said judgment is satisfied, and (iii) costs of court.

## ATTORNEYS' FEES

97.     As a result of Defendants' conduct, Plaintiff has been required to retain the services of Dykema Gossett PLLC and has agreed to pay Dykema Gossett PLLC a reasonable fee.

98.     Plaintiff specifically pleads that it is entitled to and seeks recovery of its costs and reasonable and necessary attorneys' fees pursuant to the Computer Fraud and Abuse Act, the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 37.009 and 38.001 and other applicable authorities.

## APPLICATION FOR TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

99.     Plaintiff incorporates by reference the allegations of all preceding paragraphs as if set forth fully herein.

100.    As reflected above, Defendants' wrongful acts have caused, and are continuing to cause, irreparable injury to Plaintiff for which there is no adequate remedy at law.

101.    Plaintiff has established a substantial likelihood of success on the merits in this matter.

102.    The harm faced by Plaintiff outweighs any harm that would be sustained by Defendants if the preliminary injunction were granted; indeed, the exposure of Plaintiff's confidential and proprietary information greatly exceeds any harm Defendants could conceivably suffer.  Moreover, the issuance of a preliminary injunction would not adversely affect the public interest and Plaintiff is willing to post a bond.

103.    Therefore, Plaintiff asks this Court to (a) enter a temporary injunction, from now until such time as there is a trial on the merits, and subsequently (b) enter a

permanent injunction, after a trial on the merits, requiring Defendants (and their agents, assigns, representatives or any person who is participating or is in active concert with them), who receive actual notice of this Court's order by personal service, telecopy, e-mail, or otherwise to do the following:

   a.  refrain from breaching or failing to comply with the terms of the Defendants' Employment Agreements, including specifically but without limitation, the non-disclosure (confidentiality), non-competition, non-interference and termination of employment provisions contained therein;

   b.  refrain from accessing, using, selling, disclosing, distributing, disseminating, or discussing Plaintiff's Confidential Information;

   c.  immediately return to Plaintiff, in such a manner that no further disclosure to third parties may be had, all of Plaintiff's Confidential Information in Defendants' possession (including specifically the USB drive to which Gresham downloaded information as described above and/or any other devices to which Gresham has since downloaded such proprietary information);

   d.  refrain from deleting or otherwise destroying data, whether in written or electronic form, including but not limited to electronic mail and attachments, related in any way to the allegations contained in Plaintiff's Application;

   e.  refrain from competing with MHA by performing services of the same, similar, or greater nature to those performed by Employee for the Company, for any person, entity or venture which competes with the business of the Company (which business includes recruiting and providing temporary and permanent healthcare professionals, placements and other staffing services to healthcare professionals,

healthcare facilities and other healthcare organizations), including but not limited to Consilium, within the Restricted Territory; and

f.       refrain from directly or indirectly, communicating, orally or in writing, with employees of Plaintiff, its parent companies, subsidiary companies, affiliated companies, successors or assigns, for the purpose of soliciting, recruiting, inducing those individuals to terminate their relationship with their respective employers or to otherwise interfere with Plaintiff's existing business and/or contractual relationships;

## PRAYER

WHEREFORE, Plaintiff MHA prays that the Court award it relief against Defendants as follows:

(a)       An order declaring that the Defendants have violated their Employment Agreements;

(b)       A preliminary injunction be issued enjoining the Defendants during the pendency of this action (as set forth above) after notice to Defendants and an evidentiary hearing;

(c)       A permanent injunction be issued enjoining the Defendants on final trial of this cause;

(d)       A judgment against Defendants for all of Plaintiff's damages, including actual (general and special) and exemplary, as described herein;

(e)       An order requiring Defendants to pay all Plaintiff's costs incurred in pursuing this matter, including reasonable and necessary attorneys' fees, out of pocket expenses and costs;

(f)    An order requiring the recovery of pre-judgment interest on the sums awarded at the highest rate allowed by law from the date of demand to the date of judgment;

(g)    An order requiring the recovery of post-judgment interest on the sums awarded at the highest rate allowed by law from the date of judgment until the date the judgment is satisfied;

(h)    An order granting Plaintiff all other relief that the Court deems appropriate, at law or in equity.

Dated: January 24, 2013.            Respectfully submitted,

Brian A. Colao
Bar No. 00793528
Amber Taylor Welock
Bar No. 24028218
Christine A. Nowak
Bar No. 24050200
Dykema Gossett PLLC
1717 Main Street, Suite 4000
Dallas, Texas  75201
(214) 462-6400 (Telephone)
(214) 462-6401 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**