THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERRITT HAWKINS<br>& ASSOCIATES, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 13-CV-00312-P |
| LARRY SCOTT GRESHAM, | § | |
| BILLY BOWDEN, AND | § | |
| CONSILIUM STAFFING, LLC, | § | |
| | § | |
| Defendants. | | |

---

**MOTION TO EXCLUDE EXPERT TESTIMONY FROM PLAINTIFF'S
COMPUTER FORENSIC EXPERT KELLY JONES AND BRIEF IN SUPPORT**

---

Jeffrey M. Tillotson, P.C. (jmt@lynnllp.com)
Texas Bar No. 20039200
John Volney (jvolney@lynnllp.com)
Texas Bar No. 24003118
LYNN TILLOTSON PINKER & COX, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANTS**

October 20, 2014

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION .......................................................................................................... 1

II.     EVIDENCE IN SUPPORT OF MOTION.................................................................... 3

III.    RELEVANT FACTUAL BACKGROUND................................................................... 3

        A.      MHA issued Scott Gresham a desktop computer for his use at MHA. ................. 3

        B.      MHA hired Jones to do a forensic examination of Gresham's
                MHA work station. ............................................................................................... 4

        C.      In his first report, Jones concluded that Gresham used a USB device to copy
                files from his MHA work station........................................................................... 5

        D.      Jones also concluded that some of the documents that Gresham deleted
                from his "My Documents" folder were not recoverable by MHA
                from its back-up tapes. ........................................................................................... 6

        E.      Gresham's forensic computer expert Lance Sloves examined Gresham's
                work computer and determined that Jones's conclusions were wrong
                because of Jones's flawed methodology................................................................. 7

        F.      Jones later issued a second report where he speculates that Gresham copied
                documents to "a remote computer and/or via some other method."..................... 10

IV.     ARGUMENT ................................................................................................................. 12

        A.      Legal Standard. ................................................................................................... 12

        B.      The Court Should Exclude Jones's Expert Opinions That Gresham
                Copied MHADocuments. ................................................................................... 14

                1.      The Court Should Exclude Jones's USB Copying Theory....................... 14

                2.      The Court Should Also Exclude Jones's "tsweb.htm"/remote access
                        Theory. .................................................................................................... 16

        C.      The Court Should Exclude Jones's Theory that Gresham Deleted Files
                That Were Not Recoverable from MHA's Back-Up. ....................................... 17

V.      CONCLUSION............................................................................................................. 18

CERTIFICATE OF CONFERENCE........................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)................................................... 13

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)................................................... 13

*Huss v. Gayden,*
    571 F.3d 442 (5th Cir. 2009) ........................................................................................... 12

*Knight v. Kirby Inland Marine Inc.,*
    482 F.3d 347  (5th Cir.2007) ........................................................................................... 13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)................................................. 12

*Moore v. Ashland Chem. Inc.,*
    151 F.3d 269 (5th Cir.1998) ............................................................................................ 13

*Nunn v. State Farm Mut. Auto. Ins. Co.,*
    2010 WL 2540754 (N.D.Tex. June 22, 2010) .......................................................... 12, 13

*Johnson v. Arkema, Inc.,*
    685 F.3d 452 (5th Cir.2012) ............................................................................................ 13

*Pipitone v. Biomatrix, Inc.,*
    288 F.3d 239 (5th Cir.2002) ............................................................................................ 12

*SEC v. Cuban,*
    2013 WL 3809654 (N.D.Tex. July 23, 2013) .................................................................. 12

*United States v. Cooks,*
    589 F.3d 173 (5th Cir.2009) ............................................................................................ 12

*United States v. Valencia,*
    600 F.3d 389 (5th Cir.2010) ............................................................................................ 14

*Wackman v. Rubsamen,*
    602 F.3d 391 (5th Cir.2010) ............................................................................................ 15

*Watkins v. Telsmith, Inc.,*
    121 F.3d 984 (5th Cir.1997) ............................................................................................ 13

*Wilson v. Woods,*
        163 F.3d 935 (5th Cir.1999) ............................................................................................. 12

**Other Authorities**

Federal Rule of Evidence 702 .......................................................................................... 12, 13, 18

Defendants move to exclude expert testimony offered by Plaintiff's computer forensic expert Kelly Jones, as follows:

## I.        INTRODUCTION

The Court should exclude Kelly Jones's expert opinions because Jones's opinions are not reliable. More than a month *after* Defendant Scott Gresham departed MHA, Jones was hired to examine Gresham's MHA work computer.  By then, however, the computer hard drive had been overwritten by MHA's IT staff and had been redeployed to another MHA employee. Nonetheless, based on an incomplete and sloppy analysis, Jones concluded that, on September 23, 2012 (the day before he quit), Gresham supposedly copied electronic files from the "My Documents" folder on his work computer to a USB thumb drive.  Jones even specified the specific thumb drives Gresham supposedly used (a Verbatim Store N Go or Kingston DataTraveler).  He also opined that Gresham deleted files from his "My Documents" folder and that some of those deleted files could not be recovered by MHA.

Jones's initial expert report had several fatal flaws, which were pointed out by Defendant's computer forensic expert Lance Sloves.  In response, Jones issued a supplemental report that did not refute any of the flaws but instead threw out a new theory.  Jones now opines that, if Gresham didn't use a USB device to copy documents, he must have used a "remote computer and/or some other method" to do so.  No meaningful factual or technical basis was offered for this latest opinion.  As a result, Jones' expert opinions are not reliable due to his flawed methodology and because of the multiple analytical gaps in his forensic examination.  A summary of those flaws is as follows.

*First,* Jones used a flawed methodology to opine that Gresham copied documents to a USB thumb drive on September 23, 2012.  Jones concedes that Gresham's work computer was

configured so as to disable the USB ports so that an employee such as Gresham could not copy documents to a thumb drive.   Nonetheless, Jones used an *administrator's* login (which has greater authorization rights) rather an employee's login (which Gresham would have used) to test whether the USB ports on Gresham's work computer were operational and concluded that, despite the restrictions imposed by MHA's IT staff on MHA's employees, Gresham could have copied documents to a Kingston or Verbatim USB drive.

Apart from this methodological flaw, Jones later conceded that no USB drive was ever registered to Gresham's work computer on the day Gresham supposedly copied the documents. Further, while Jones identified two specific devices that he claimed Gresham used to do the copying, a more detailed review of Gresham's work computer revealed that those devices were in fact registered to the computer either *before* Gresham was at MHA (Kingston drive) or *after* he left (Verbatim drive).   In his deposition, Jones was forced to concede that USB drives registered before or after Gresham was at MHA could not have been used by Gresham to copy documents.

*Second,* Jones' latest theory amounts to pure speculation.  After his first theory failed, Jones then opined that Gresham created a "tsweb" file two days before he quit MHA and thus Gresham may have copied documents to a remote computer the day before he quit. This "theory," however, does not survive even a minimum of scrutiny. The "tsweb" file was not created by Gresham prior to his departure but instead was the standard remote access application installed *by MHA* so that their employees could run MHA-related applications. Moreover, a simple review of Gresham's internet browser history on his work computer (which Jones failed to do) shows that the "tsweb" file is linked to an *MHA* "tsweb" folder of MHA applications and not some remote computer. In the end, Jones has no evidence or expert analysis to support a

claim of remote copying by Gresham, much less any analysis as to how the copying occurred or to where the documents were copied.

*Third,* Jones' final opinion regarding Gresham's deletion of files prior to his departure is of no significance or relevance. Gresham affirmatively states that he deleted documents before his departure (in an effort to clean his computer for the next user) and MHA concedes it did the same after his departure (by overwriting the hard drive for the next user). Moreover, MHA agrees that Gresham's deleting of files violated no company policy and that MHA generally back up all files on an employee's My Documents folder five times a week. The fact that some of the deleted files were not backed up on MHA servers is irrelevant because (a) Jones has no idea why the files were not backed up and (b) it could not have been Gresham's fault that MHA's server back-up failed, even assuming it did.

Jones' opinions are neither reliable nor grounded in solid forensic analysis. This is not simply a "battle of two computer experts," with the flaws pointed out in the motion going to weight. Instead, there is no factual or analytical basis for Jones' opinions and they should be excluded.

## II.       EVIDENCE IN SUPPORT OF MOTION

Defendants have filed an appendix in support of this motion. Citations in this motion are to specific pages of the appendix, as in "App. 100."

## III.      RELEVANT FACTUAL BACKGROUND

### A.       MHA issued Scott Gresham a desktop computer for his use at MHA.

Scott Gresham was employed by MHA from May 17, 2010 through September 24, 2012, when he terminated his employment with the company. App. 310 (Jones Report at 6). During his time at MHA, Gresham was assigned a specific MHA Dell desktop computer. App. 305 (Jones

Report at 1). Two facts about Gresham's MHA computer are important for this motion. *First,* Gresham's computer was set up by MHA's IT staff so that any documents that Gresham saved in his "My Documents" folder on the computer would be redirected and saved on an "H" or "Home" directory on a separate MHA server, which MHA backed-up five times per week. App. 241-242 (Branam Dep. at 57:11-58:18). *Second*, all MHA's employees' computers are set up so that the USB ports on the computers are disabled in order to prevent MHA's employees from using those ports to copy MHA's information. App. 249(Branam Dep. at 86:6-89:12). Per MHA's senior IT systems engineer and corporate representative, Michael Branam, the USB ports on Gresham's work computer were disabled automatically pursuant to MHA's active domain policy. App. 249, 255 (Branam Dep. at 86:6-89:12; 112:19-113:17).

**B.     MHA hired Jones to do a forensic examination of Gresham's MHA work station.**

Gresham quit MHA on September 24, 2012, and later went to work for Defendant Consilium. As explained in Defendants' brief in support of their motion for summary judgment, Gresham has testified that the day before he quit MHA he deleted all the files contained in the "My Documents" folder and on the desktop of his MHA computer in order to remove personal information and to clean up the computer for the next user.[1]

MHA hired Kelly Jones on October 31, 2012, to examine Gresham's work computer to determine if Gresham copied or deleted any files from that computer before he quit MHA. App. 277 (Jones Dep. at 25:4-11). By the time MHA hired Jones, however, MHA had already overwritten the existing image on Gresham's computer with a "ghost image" and redeployed that computer to a different MHA employee. App. 276-277 (Jones Dep. at 23:1-25:3). Because

---

[1]     As set out in Defendants' Motion for Summary Judgment, the deletion of files by an employee violated no MHA policy.  MHA generally backs up all files in an employee's My Documents file but MHA does not prohibit its employees from deleting documents.  *See* Defendants' Brief in Support of Their Motion for Summary Judgment at 13-14.

Gresham's computer had already been overwritten and redeployed, Jones was required to look at the unallocated space on the computer to determine what happened to the computer while it was assigned to Gresham. App. 276-277(Jones Dep. at 23:18-24:8). Jones admitted at his deposition that MHA's overwriting of Gresham's computer made his task more difficult than if MHA had simply preserved the computer. App. 277 (Jones Dep. at 26:1-10).

**C.    In his first report, Jones concluded that Gresham used a USB device to copy files from his MHA work station.**

Jones provided his first expert report in May 2014. App. 305-322. In that report, Jones concluded that Gresham used either a Kingston or Verbatim-branded USB device to copy files from his computer on September 23, 2012, the day before Gresham quit. App. 312 (Jones Report at 8).

Jones reached this opinion by doing two things.

- Jones looked at a Windows Registry that he recovered from the unallocated space on Gresham's computer. That registry showed that a Verbatim USB device had been registered to Gresham's computer on March 21, 2011, and that a Kingston device had been registered on August 29, 2012.[2] App. 281, 310 (Jones Dep. at 42:11-25; Jones Report at 6).

- Jones logged into Gresham's work computer using an administrator login and plugged in a USB to see if the port was operational. App. 283, 285 (Jones Dep. at 50:21-51:15, 56:24-57:7). Not surprisingly, the USB port was operational when Jones logged in to the computer using as an administrator login. *Id.*

Based on this examination, Jones concluded that the USB ports on Gresham's computer were operational and that Gresham used a Verbatim Store N Go or Kingston DataTraveler USB drive to copy documents on September 23, 2012. App. 310 (Jones Report at 6).

---

[2]    Jones identified one other Kingston device that was registered to the computer on August 4, 2009, but Jones concluded that Gresham could not have plugged in that particular device because it was registered to the computer at a time when Gresham was not employed by MHA. App. 317-318, 284-285 (Jones Report at Ex. 1, Fig. 1; Jones Dep. at 52:8-56:11). At his deposition, Jones agreed that any USB devices registered to Gresham's computer while Gresham was not employed at MHA could not have been used by Gresham. App. 284-285 (Jones Dep. at 55:18-56:11).

Importantly, in reaching this conclusion, Jones admits that he did not login to Gresham's computer using an employee login such as Gresham's; and Jones did not know whether an administrator login granted different rights from an employee login. App. 280-281 (Jones Dep. at 39:23-41:9). In fact, MHA's IT person Michael Branam confirmed that an MHA administrator login carries greater rights than a regular employee login. App. 250-251 (Branam Dep. at 93:23-94:5).

Moreover, Jones admits that he saw no specific evidence in the Windows Registry he examined that any USB device was plugged into Gresham's work computer **on September 23, 2012,** which is the date Jones nonetheless concluded that copying took place. App. 293 (Jones Dep. at 88:12-17, 89:7-12). Jones also admits that the Windows Registry he looked at updated itself several times during Gresham's period of employment, but no update occurred on September 23, 2012. App. 293 (Jones Dep. at 89:13-90:1). Finally, Jones admits that he did not look at any Windows Registries in the allocated or live space of the computer that might have been created after Gresham left MHA. App. 281 (Jones Dep. at 41:23-42:25).

**D.    Jones also concluded that some of the documents that Gresham deleted from his "My Documents" folder were not recoverable by MHA from its back-up tapes.**

In addition to concluding that Gresham used either a Kingston or Verbatim USB device to copy MHA's files from his work computer, Jones concluded that Gresham deleted a total of 840 files from his work computer. App. 313-314 (Jones Report at 9-10). Of those 840 files, Jones concluded that 564 of those files were recoverable from MHA's server back-up of Gresham's "Home Directory," per MHA's back-up procedure, but that 276 of those files were not recoverable from the MHA server back-up. *Id.* When asked to explain why 276 files, which are shown by Jones's report to have been saved in Gresham's "My Documents" folder, were not captured by MHA's back-up of Gresham's "Home" directory, Jones could offer no explanation.

App. 297-298 (Jones Dep. at 107:14-110:16).  The best Jones could offer was "IT is not a perfect world. We all know we have IT issues with our own computers, ***blue screen of death***." App. 298 (Jones Dep. at 110:7-22) (emphasis added).

**E.    Gresham's forensic computer expert Lance Sloves examined Gresham's work computer and determined that Jones's conclusions were wrong because of Jones's flawed methodology.**

Gresham hired Lance Sloves to rebut Jones's expert opinions. Lance Sloves issued his expert rebuttal report on June 12, 2014. App. 396-430, 355 (Sloves Report; Sloves Dep. at 71:17-73:6). In that report, as well as in his deposition, Sloves explained all of the errors in the methodology employed by Jones in his examination and how those methodological errors caused Jones to reach incorrect, unsupportable conclusions. App. 396-430 (Sloves Report). With respect to Jones's USB copying theory, Sloves opined:

*First*, Jones's conclusion that Gresham used either a Kingston or Verbatim USB device to copy documents on September 23, 2012, was wrong because the Windows Registry records recovered for that date showed that no USB device of any brand was plugged into Gresham's work computer on that date. App. 400-401, 361 (Sloves Report at 5-6; Sloves Dep. at 96:4-96:17). Jones acknowledged this fact and that he failed to consider it in his analysis. App. 293 (Jones Dep. at 88:12-17, 89:7-12).

*Second*, Jones's conclusion that Gresham possibly used a Kingston DataTraveler on September 23, 2012, was incorrect because Jones failed to analyze all Windows Registry records recovered from the unallocated space on Gresham's computer. App. 400-401, 392-393 (Sloves Report at 5-6; Sloves Dep. Ex. 123). Those Windows Registry records, which Jones either did not locate or ignored, showed that the specific Kingston DataTraveler 2.0 that Jones concludes

was used by Gresham in fact was first registered to Gresham's computer on September 29, 2009,

a *date prior to Gresham's employment with MHA*.  The detailed history is:

Attached devices by serial number

| Drive | Last access | Name | Serial |
|---|---|---|---|
| D: | 2012-08-20 17:26:15 | C:6RomHL-DT-ST_CORWDVD_GCCT10N_____A100 | |
| | 2012-08-29 17:26:08 | Disk&Ven_Kingston&Prod_DataTraveler_2.0&Rev_1.00 | 000AEB93BC0C5ABA3410042C8:0 |
| | 2011-03-22 13:38:55 | DiskST350815AS_____3.ADA | 5&1H0455c0&0&0.0.0 |
| | 2011-03-22 13:26:51 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | D000000000001CE1&0 |
| E: | 2011-03-22 13:35:30 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | D00000000001CE1&0 |
| | 2011-03-21 13:23:37 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | D000000000000CD7&0 |
| | 2011-03-21 13:23:28 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | D000000000000CD7&0 |
| | 2009-09-29 13:31:36 | Disk&Ven_Kingston&Prod_DataTraveler_2.0&Rev_1.00 | 000AEB93BC0C5ABA3410042C8:0 |
| | 2009-08-04 16:17:08 | C:6RomSONY_CORWDVD_CRX880A_____KD09 | |
| | 2009-08-04 16:17:03 | DiskWDC_WD800JD-75MSA3_____10.01E04 | 5&793570&0A&0.0.0 |
| | 2009-08-04 16:00:11 | Disk&Ven_Kingston&Prod_DataTraveler_2.0&Rev_PMAP | 5B861300A047&0 |
| | 2009-08-04 15:59:56 | Disk&Ven_Kingston&Prod_DataTraveler_2.0&Rev_PMAP | 5B861300A047&0 |
| | 2009-08-04 11:23:24 | DiskST340014AS_____8.12 | 5&1037d86c&0&0.0.0 |
| | 2009-08-04 09:52:51 | DiskWDC_WD400BD-75DMC0_____06.01C06 | 5&2a96c317&b&0&0.0.0 |
| | 2009-06-30 12:56:33 | C:6RomTSSTcorp_CD-RW____TS-H292B_____DE00 | |
| | 2009-06-30 12:56:33 | C:6RomHL-DT-ST_CD-RW_GCE-8481B_____F109 | |
| | 2009-06-30 12:56:33 | DiskMemor_6V60E80_____VA131610 | 325650650504e474a20202020202625650105504e474a |

App. 392-393, 420 (Dep. Ex. 123; Exhibit 2 to Sloves' Report). Accordingly, by Jones's own

admission that devices registered outside of Gresham's employment dates could not have been

used by Gresham, Gresham could not have used that particular device to copy MHA's

documents. App. 284-285 (Jones Dep. at 55:18-56:11). Gresham was not employed by MHA on

September 29, 2009.

*Third*, Jones's conclusion that Gresham possibly used a Verbatim Store N Go was

incorrect because Jones failed to analyze the live Windows Registry record from the active space

on Gresham's work computer. App. 401-402, 394-395 (Sloves Report at 6-7; Sloves Dep. Ex.

124). That record, which Jones admitted he ignored in his analysis, showed that the Verbatim

Store N Go was registered to Gresham's work computer on October 3, 2012 – *a week after Gresham quit MHA*[3]:



Attached devices by serial number

| Drive | Last access | Name | Serial |
|---|---|---|---|
| | 2012/10/10 15:57:47 | DiskST380815A5_____4 ADA__ | 5&II8455x0&0&0.0.0 |
| | 2012/10/03 18:02:03 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | 0000000001CE1A0 |
| | 2012/10/03 15:43:48 | DiskST500DM001-1BD142_____KC45 | 5&2e506484&0&0.0.0 |
| D: | 2011/10/06 15:34:46 | C&RomTSS1corp_CDRW/DVD_TSL462D_____DE01 | |
| | 2011/10/03 16:12:42 | Disk&Ven_Verbatim&Prod_STORE_N_GO&Rev_0.00 | 0000000001CE1A0 |

App. 394-395, 421-422 (Sloves Dep. Ex 124; Ex. 3 to Sloves Report). Thus, as Jones admitted at his deposition, Gresham could not have used that device to copy documents. App. 284-285 (Jones Dep. at 55:18-56:11).

   ***Fourth***, the basic methodology that Jones used to test whether the USB ports on Gresham's were active was also flawed. App. 402-404, 369 (Sloves Report at 7-9; Sloves Dep. at 126:7-20). As Jones admitted at his deposition and in his report, he logged into Gresham's computer using an MHA administrator login. App. 280-281 (Jones Dep. at 39:23-41:9). Jones did not login as Gresham or as an MHA employee; and Jones did not know whether an administrator login had greater access rights on the computer at issue. *Id*. Accordingly, there is no basis for Jones to conclude that the USB ports on Gresham's computer were active based on his flawed "test" of those ports.

---

[3]    In his report, Sloves concluded that MHA's IT department must have plugged the Verbatim USB device into Gresham's (former) work computer on October 3, 2012, when the department was overwriting the computer in order for it to be redeployed to a new user. App. 403-404 (Sloves Report at 8-9). Importantly, Jones was aware that MHA's IT department used USB devices in their jobs, including in the overwriting and redeployment of work stations. App. 278 (Jones Dep. at 28:9-12). But Jones did not ask the MHA IT department for an inventory of the USB devices used by that department. App. 278 (Jones Dep. at 28:1-25).

*Finally*, in reaching his USB copying conclusion, Jones failed to take into account that no Verbatim or Kingston device had ever been registered to Gresham's personal computer. App. 359, 384-391 (Sloves Dep. at 86:12-89:22; Dep. Ex. 122). Thus, there was not only no evidence that Gresham had copied documents from his MHA computer, there was no evidence that he copied MHA documents *to* any other computer.

With respect to Jones's theory that Gresham deleted documents from his "My Documents" folder that were not recoverable by MHA, Sloves points out the fact that Jones has not explained why documents that should have been redirected to MHA's "Home" or "H" drive were not recoverable from MHA's server back-up. App. 406-409 (Sloves Report at 11-14).

Importantly, Jones has not filed any supplemental or other expert report rebutting any of the analysis or conclusions in Sloves' first report, although he was given the opportunity to do so. In fact, MHA's counsel indicated that Jones would not be providing any report in response to Sloves' initial report. App. 273-274 (Jones Dep. at 11:18-13:17). Moreover, Jones has now been provided a forensic image of Gresham's personal computer equipment pursuant to Magistrate Judge Ramirez's order, and Jones has not identified any of the MHA documents he claims were copied on those images, nor has he identified any Kingston or Verbatim USB device plugged into Gresham's home computer. [Docket No. 89].

## F.     Jones later issued a second report where he speculates that Gresham copied documents to "a remote computer and/or via some other method."

After Sloves identified all of the flaws in Jones's initial analysis, Jones came up with an entirely new theory about how Gresham may have copied files from his MHA work computer. App. 329-330 (Jones Second Report at 7-8). In his second report, Jones claims that Gresham created a "tsweb.htm" file on Friday, September 21, 2012, two days before he quit and that Gresham accessed the "tsweb.htm" file on September 23, 2012. *Id.* Jones then speculates that

Gresham *could have used* the "tsweb.htm" file to connect to the desktop of a remote computer while he was at the office on September 23, 2012. *Id.* Based on this new "finding" and his earlier USB theory, Jones concludes that "Gresham copied these files to a USB thumb drive, to a remote computer, and/or via some other method." App. 332 (Jones Second Report at 10).

Lance Sloves analyzed Jones's "tsweb.htm" finding in his report dated August 15, 2014. App. 431-435 (Sloves Second Report). In that report, Sloves again points out several flaws in Jones's analysis, many of which are evident on the face of Jones' second report. *Id.* Specifically, Sloves first points out that the Internet Explorer Browser History from Gresham's MHA work computer, which Jones failed to consider in his second report, showed that Gresham regularly accessed the MHA TSWEB Remote Desktop via Internet Explorer from October 11, 2011 through September 23, 2012. App. 432-433 (Sloves Second Report at 2-3). This finding refutes Jones's opinion that Gresham created that "tsweb.htm" connection on September 21, 2012. *Id.*

Next, Sloves points out that the "tsweb" URL is actually directed to an MHA internal server that contains MHA applications. *Id.* The relevant internet history shows that the "tsweb" file linked to "http://***mha-apps***/tsweb/Default.htm," not to any remote computer access by Gresham. *Id.* (Emphasis added). Most importantly, Sloves points out that Jones did not conduct any examination to justify his "tsweb.htm" conclusion. He did not interview MHA's IT staff to determine what MHA applications MHA employees are capable of accessing remotely using TSWEB or whether TSWEB is even used by MHA for company-related purposes. App. 434-435 (Sloves Second Report at 4-5). Nor did Jones test his conclusions by extracting and reviewing the internet history on Gresham's work computer to see whether there actually was any accessing of a remote computer by Gresham at any time. *Id.* Finally, even though Jones has now been provided a forensic image on Gresham's personal computer equipment, Jones has not provided

any additional analysis showing that Gresham used remote access to copy files from his work computer to his home computer.[4] [Docket No. 89].

For the reasons stated below, the Court should exclude Kelly Jones from offering any expert opinions in this case.

## IV.   ARGUMENT

### A.   Legal Standard.

The Court decides motions to exclude expert testimony in its role as gatekeeper under Federal Rule of Evidence 702. *SEC v. Cuban,* 2013 WL 3809654, at *1 (N.D.Tex. July 23, 2013) (citing *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir.2002)) (citation omitted). "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 2540754, at *2 (N.D.Tex. June 22, 2010) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

The first requirement is that the expert be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.' " *United States v. Cooks,* 589 F.3d 173, 179 (5th Cir.2009) (quoting Rule 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir.1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.

---

[4]        In his second report, Sloves points out the fact that none of the files that MHA alleges Gresham copied appear on the full file listings of all files contained on Gresham's personal computer equipment. App. 435 (Sloves Second Report at 5).

Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

The second requirement is that the expert's testimony be relevant. To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " *Pipitone,* 288 F.3d at 245 (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir.2007) (quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786); *see also* Rule 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").

The third requirement is that the expert's testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight,* 482 F.3d at 352 (quoting *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786); *see also* Rule 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). Expert testimony "must constitute 'more than subjective belief or unsupported speculation.' " *Nunn,* 2010 WL 2540754, at *2 (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786). The court focuses on the expert's methodology, not the conclusions generated by it. *Id.* at *4 (citing *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 989 (5th Cir.1997)). If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *see also Johnson v. Arkema, Inc.,* 685 F.3d 452, 460–61 (5th Cir.2012); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 278–79 (5th Cir.1998). This review is usually conducted by considering the five nonexclusive *Daubert* factors. But these factors "may

or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho,* 526 U.S. at 150, 119 S.Ct. 1167.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786; *see also Johnson,* 685 F.3d at 459. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia,* 600 F.3d 389, 424 (5th Cir.2010) (citation omitted).

**B.     The Court Should Exclude Jones's Expert Opinions That Gresham Copied MHA Documents.**

Jones offers two possible theories for how Gresham copied MHA's documents on September 23, 2012: (1) by using a Kingston or Verbatim USB drive; or (2) by using "tsweb.htm" to copy documents to a remote computer. Because neither of these theories is based on a reliable methodology or examination by Jones and because there are multiple unexplained analytical gaps in Jones's forensic analysis, the Court should exclude any expert opinion from Jones that Gresham copied documents from his MHA work computer.

*1.     The Court Should Exclude Jones's USB Copying Theory.*

MHA cannot meet its burden to establish the reliability of Jones's conclusion that Gresham used a Kingston or Verbatim branded USB device to copy MHA documents on September 23, 2012 (or at any other time). As explained above, there are simply too many analytical gaps in Jones's analysis to support Jones's conclusion:

- Jones fails to explain why there is no record of any USB – much less a Kingston or Verbatim USB – being attached to Gresham's work computer on September 23, 2012, the date of alleged copying.

- Jones fails to take into account undisputed evidence that the Kingston USB device identified in his report was first attached to Gresham's work computer on

September 29, 2009, *before Gresham was employed by MHA*, and therefore could not have been used by Gresham.

- Jones fails to take into account undisputed evidence that the Verbatim USB device identified in his report was attached to Gresham's work computer on October 3, 2012, *after Gresham terminated his employment at MHA*, and therefore could not have been used by Gresham

Further, Jones's methodology for testing the USB port on Gresham's work computer was seriously flawed because Jones did not test the functionality of the port by using an employee login. As explained above, Jones admits that he logged into Gresham's computer using an administrator login, not an MHA employee login (much less Gresham's specific login). Jones also admits that he has no idea whether using an administrator login granted him different, greater access rights. Finally, Jones admits that the USB ports on Gresham's MHA work computer should have been disabled per MHA's policy, but Jones was not even sure how MHA implemented that policy on its work computers. App. 280, 285 (Jones Dep. at 38:12-17, 58:14-59:17). Accordingly, Jones's conclusions are not supported by a reliable methodology.

When there is a difference in experimental conditions, as there clearly were in Jones's testing of Gresham's work computer, an expert's testimony is sufficiently reliable to be admissible only if the difference is acknowledged by the expert and the expert can show that the methods and principles applied to the facts are nevertheless reliable. *See Wackman v. Rubsamen*, 602 F.3d 391, 402–03 (5th Cir.2010) (concluding that some analytical gaps, where acknowledged by the expert and explained, go to the weight of the evidence rather than to admissibility). Here, Jones made no effort to test Gresham's work computer under the appropriate experimental conditions by logging in as an MHA employee; Jones failed to acknowledge the difference in experimental conditions; and Jones cannot show that the methods

and principles he applied are nevertheless reliable. Accordingly, Jones's USB copying theory should be excluded.

Finally, Jones fails to explain how Gresham could have used a Verbatim or Kingston device when neither of those devices was ever attached to Gresham's personal computer equipment and when there is no evidence that any of MHA's information was ever downloaded to Gresham's personal computer from any device.

Importantly, Jones was given the opportunity to explain and rebut Lance Sloves' criticisms of Jones's methodology and conclusions, but Jones declined the opportunity to do so. This is because Jones knows that his analysis and methodology were seriously flawed and that his opinions are not supported by any reliable forensic evidence.

### 2. The Court Should Also Exclude Jones's "tsweb.htm"/remote access Theory.

Nor can MHA meet its burden to establish the reliability of Jones's conclusion that Gresham used a "tsweb.htm" file to copy files to a remote computer. As is clear from Jones's second report, his "tsweb.htm" conclusion is nothing more than speculation with no testing or investigation to support it. Indeed, Jones's ultimate conclusion that Gresham copied files "to a USB thumb drive, to a remote computer, *and/or via some other method*" itself shows that Jones is simply speculating and cannot identify any specific evidence that Gresham copied any MHA information using any specific method.

Again, there are too many analytical gaps between Jones's investigation and Jones's "tsweb.htm" conclusion for Jones's conclusion to be reliable. First, Jones engaged in absolutely no investigation to determine whether the MHA IT department installed the "tsweb" application on MHA work stations to allow MHA employees to run MHA-related applications remotely. Second, Jones ignored undisputed evidence that Gresham regularly accessed the "tsweb" remote

desktop throughout his employment at MHA, which contradicts Jones's conclusion that the "tsweb.htm" file was created on September 21, 2012. Third, Jones fails to take into account undisputed evidence that the "tsweb" URL is actually directed to an MHA internal server containing MHA applications. The relevant internet history, which Jones either did not investigate or ignored, shows that the "tsweb" file linked to "http://***mha-apps***/tsweb/Default.htm," not to any remote computer access by Gresham.

Finally, Jones's conclusions are not supported by any relevant testing. Jones did not test his conclusions by extracting and reviewing the internet history on Gresham's work computer to see whether there actually was any accessing of a remote computer by Gresham at any time. Similarly, even though Jones has now been provided a forensic image on Gresham's personal computer equipment, Jones has not provided any additional analysis showing that Gresham used remote access to copy files from his work computer to his home computer.

Simply put, Jones has no reasonable, reliable basis to conclude that Gresham used any type of remote access to copy MHA's files. Accordingly, the Court should exclude Jones's "tsweb"/remote access opinion from the trial of this matter.

**C.**     **The Court Should Exclude Jones's Theory that Gresham Deleted Files That Were Not Recoverable from MHA's Back-Up.**

Last, the Court should exclude Jones's opinion that Gresham deleted files from his MHA work computer that were not recoverable from MHA's server back-up. Jones could offer no explanation for how or why this occurred beyond the unhelpful statement that "IT is not a perfect world. We all know we have IT issues with our own computers, ***blue screen of death***." App. 298 (Jones Dep. at 110:7-22) (emphasis added). Jones is supposed to be a computer expert hired to perform a forensic analysis of Gresham's MHA work computer. Defendants submit that Jones has no basis for his conclusion that Gresham deleted files from his MHA work computer that

were not recoverable by MHA.  "Blue screen of death" is not expert analysis. It is nothing more than speculation by a witness who has no expert basis for his conclusion.

## V.   CONCLUSION

For all of the reasons stated here, the Court should exclude all of Kelly Jones's expert opinions from the trial of this matter. Jones's USB copying and "tsweb.htm"/remote access theories are simply not reliable given the multiple errors in Jones's methodology and analysis. Because these opinions are not reliable, there is no basis under Federal Rule of Evidence 702 and the case law cited above for Jones to opine that Gresham copied documents from his MHA work computer.  Likewise, Jones's opinion that Gresham deleted documents that were not recoverable by MHA is unreliable because Jones could offer no reliable analysis or explanation to support that opinion. Because Jones has no basis to offer any expert opinions in this case whatsoever, he should be excluded for all purposes.

Date:  October 20, 2014                    Respectfully submitted,

                                          */s/ John Volney*
                                          Jeffrey M. Tillotson, P.C. (jmt@lynnllp.com)
                                          Texas Bar No. 20039200
                                          John Volney (jvolney@lynnllp.com)
                                          Texas Bar No. 24003118
                                          **LYNN TILLOTSON PINKER & COX, L.L.P.**
                                          2100 Ross Avenue, Suite 2700
                                          Dallas, Texas  75201
                                          (214) 981-3800 Telephone
                                          (214) 981-3839 Facsimile

                                          **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for movant and counsel for respondent have personally conducted a conference at which there was a substantive discussion of every item presented to the Court in this motion and despite best efforts the counsel have not been able to resolve those matters presented.

Certified to on October 20, 2014, by

_/s/ John Volney_
John Volney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on October 20, 2014 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_/s/ John Volney_
John Volney