IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MERRITT HAWKINS                        §
& ASSOCIATES, LLC,                     §
                                       §
          Plaintiff,                   §
v.                                     §          3:13-cv-00312-P
                                       §
LARRY SCOTT GRESHAM,                   §
BILLY BOWDEN, and                      §
CONSILIUM STAFFING, LLC,               §
                                       §
          Defendants.                  §

## **ORDER**

Now before the Court is Defendants' Motion to Exclude Expert Testimony of Kelly Jones, Filed October 20, 2014.  Doc. 96.  Plaintiff filed its response on November 10, 2014. Doc. 101.  On November 24, 2014, Defendants filed their reply.  Doc. 106.

After reviewing the briefing, the evidence, and the applicable law, the Court DENIES Defendant's Motion to Exclude.

### I.      Background

This case is about two employees who left a company to work for a competitor.  Defendants Larry Gresham ("Gresham") and Billy Bowden ("Bowden") are both former employees of Plaintiff Merritt Hawkins & Associates, LLC ("MHA").  Doc. 58 at 10.  As employees of MHA, both Bowden and Gresham signed agreements containing non-competition, non-disclosure, and non-interference provisions.  Doc. 58 at 5-8.  On September 7, 2010, Bowden ended his employment with MHA.  Doc 58 at 10.  During the fall of 2012, MHA claims that Bowden, in direct violation of a non-interference provision still valid within his employment contract with MHA, recruited Gresham to come work with Bowden for Defendant Consilium Staffing, LLC

("Consilium"), a direct competitor of MHA.  Doc. 58 at 11.  Gresham apparently decided to join

Bowden, and, as he left MHA's employment, MHA claims that Gresham accessed MHA's offices

using his security badge and utilized his employee password to download over four-hundred files

from MHA's computer network.  Doc. 58 at 14.  Defendants deny these allegations.  Doc. 66; 67.

To prove that Gresham downloaded files from MHA's computer network, MHA offers

expert testimony from its computer forensic investigator, Kelly Jones ("Jones").  Jones intends to

testify regarding which files Gresham copied, how the files were transferred, which files were

deleted, and which files were unrecoverable.  Now, Defendants seek to exclude Jones's

testimony.

## II.     Legal Standard & Analysis

### a.   Admissibility of Expert Witness Opinions

Under Federal Rule of Evidence 702, expert testimony is admissible to assist the trier of

fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.  The landmark

Supreme Court case *Daubert* frames the Rule 702 analysis.  *Pipitone v. Biomatrix, Inc.*, 288 F.3d

239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

"Under *Daubert*, Rule 702 charges trial courts to act as gate-keepers, making a preliminary

assessment of whether the reasoning or methodology underlying the testimony is scientifically

valid and of whether that reasoning or methodology properly can be applied to the facts in

issue."  *Pipitone*, 288 F.3d at 243-44 (quoting *Daubert*, 509 U.S. at 592-93) (internal quotation

marks omitted).  When challenged, the party offering expert testimony must show by a

preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant; and

(3) the testimony is reliable.  *See Daubert*, 509 U.S. at 590-91; *see also Mathis v. Exxon Corp.*,

302 F.3d 448, 459-60 (5th Cir. 2002) ("The party offering the expert must prove by a

preponderance of the evidence that the proffered testimony satisfies the rule 702 test."); *Serrano-Cordero v. Kroger*, No. 4:10-CV-483, 2012 WL 3495376, at *1-2 (E.D. Tex. Aug. 15, 2012).

The issues of qualification, relevancy, and reliability are necessarily separate and yet intertwined. First, qualification turns on an expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A qualified expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Second, courts evaluate reliability through a non-exclusive list of factors. *Daubert*, 509 U.S. at 592-93. Courts generally seek to determine whether the expert's theory or technique:

> (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community.

*Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 591-93). Finally, relevant evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and involves facts "of consequence in determining the action." Fed. R. Evid. 401; *see also Daubert*, 509 U.S. at 587 ("This standard is a liberal one."). A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Far from "a definitive checklist or test," a court's decision to permit or exclude expert testimony is discretionary. *Daubert*, 509 U.S. at 593; *see also St. Martin v. Mobil Exp. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000). When evaluating challenges, courts home in on the expert's principles and methodology, disregarding the final conclusion. *Daubert*,

509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). "Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, *not* the admissibility of the expert's testimony." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007) (emphasis added) (quoting *Fed. Deposit Ins. Corp. v. Suna Assocs., Inc.*, 80 F.3d 681, 687 (2d Cir. 1996)) (internal quotation marks omitted). Moreover, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *Daubert*, 509 U.S. at 596). On the issue of weight, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned [to] that opinion rather than its admissibility and should be left for the jury's consideration. . . . [It is] the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382 F.3d 546, 562-63 (5th Cir. 2004).

Here, Defendants do not challenge Jones's qualifications or the relevancy of his testimony. Instead, Defendants argue that Jones's opinions regarding the allegedly copied files and the allegedly deleted files are unreliable.

### b. The Allegedly Copied Files

Jones offers two theories for how Gresham may have copied files from MHA: through use of a USB thumb drive or use of "tsweb.htm." Doc. 101 at 15-19. Defendants challenge the reliability of Jones's testimony on both theories.

### i.  Jones's USB Theory

First, Jones intends to testify that Gresham may have used a USB thumb drive to transfer files from his computer at MHA.  Jones believes a USB device could have been used based on tests revealing that the USB ports in Gresham's computer were functional and two USB devices were connected to Gresham's computer and registered on March 21, 2011 and August 29, 2012. Doc. 102-1 at 17.  Further, because the registry does not generally record subsequent insertions of the same USB thumb drive, Jones's report states that either USB could have been inserted into Gresham's work computer on September 23, 2012, when the alleged copying took place.  *Id.*

Defendants challenge the reliability of Jones's testimony because there is no record of a USB thumb drive being attached to Gresham's computer on September 23, 2012; both USB devices were attached to Gresham's computer at times before and after Gresham's employment; Jones never tested whether the USB ports were usable with an employee login as opposed to an administrator login; and no evidence indicates either device was attached to Gresham's personal computer or used to transfer any information onto Gresham's personal computer.  Doc. 96 at 18-20.

Despite Defendants' arguments, Jones's testimony is not unreliable.  Jones only intends to testify that Gresham could have possibly connected a USB thumb drive to his MHA work computer and copied the alleged files on September 23, 2012.  *See* Doc. 102-1 at 16-17.  He bases his opinion on reliable tests of the computer's functioning USB ports and the registry information indicating that two USB devices were connected to the computer.  *Id.*  While there was no record of a USB being attached on September 23, 2012, Jones states that such attachment would not necessarily have been recorded because "[g]enerally, once information about a USB thumb drive is written into the Windows Registry, subsequent insertions of the same USB thumb drive into the

computer's USB Ports will not change the time last written stamp for that USB device." *Id.* at 17. As an expert in the field, Jones is entitled to testify regarding his expectations of the computer system. Accordingly, the lack of computer records on the day alleged does not render Jones's testimony or methods unreliable.

Likewise, Jones's testimony is not completely discredited by the evidence indicating USB devices were registered on Gresham's computer multiple times before and after the time period of Gresham's employment. Defendants rely on their expert Lance Sloves's testimony that USB devices with names and "serial numbers" matching the USB devices registered on March 21, 2011 and August 29, 2012 had been registered on Gresham's computer during periods before and after Gresham's employment. Doc. 102-2 at 6 (Sloves's report). In response, Jones testified that the identifying number was not a serial number because it lacked the correct number of digits. Doc. 94-1 at 65. Instead, Jones explained the identifying number of the device must have been assigned by the computer's operating system. *Id.* Further, after admitting that he does not "know how they generate that number," Jones testified that the system could assign the same exact identifying number to a different device if the second device has the same characteristics. Doc. 94-1 at 65-66. Notably, Defendants have not claimed that the identifying number was not generated by the operating system or that it did contain the correct number of digits. *See* Doc. 106 at 5-6. Instead, Defendants argue that Jones's testimony is overly speculative. However, Jones's technical expertise allows him to make predictions regarding the system, and some evidence supports his testimony. For example, because Gresham was the only one with access to the computer during Gresham's employment, Jones believes that the USBs registered in that period had to have been registered by Gresham. Doc. 102-1 at 16. Thus, the devices registered outside the period of Gresham's employment must have been different devices. *Id.* While Jones's theory is less than

irrefutable, Defendants have offered no explanation for how the identifying number is assigned or why the identifying number lacks the correct number of digits for a serial number. *See* Doc. 106 at 5-6. Because Defendants have only shown that the experts disagree as to what the identifying number represents, the Court will not exclude Jones's testimony at this time.

Next, Defendants argue that Jones's methods were unreliable because Jones did not test the functionality of the USB ports while using an employee login, as opposed to an administrator login. Doc. 106 at 6-7. This argument fails because Jones intended to test only the physical functionality of the USB ports. *See* 101 at 24. Jones did not need to test the ports with an employee login because the USB ports should have been disabled based on MHA's policy. *Id.* at 16. Jones was also not required to theorize how the USB ports were enabled on Gresham's computer. MHA has offered other evidence, including testimony from Michael Branam, regarding how an employee could circumvent MHA's computer policy. *See* Doc. 94-1 at 28. Jones is not required to weigh in on the issue. Therefore, Jones's failure to conduct the test using an employee login does not render his testimony unreliable.

Finally, Jones's opinions are not rendered inadmissible by the lack of proof that the same two USB devices were used on Gresham's personal computer. Jones only intends to testify that Gresham possibly connected a USB device to his MHA work computer and copied files onto it. *See* Doc. 102-1 at 16-17. Jones has offered no testimony regarding where such a USB device is, or how it was subsequently used. For the same reasons, the lack of evidence that Gresham connected any USB device to his home computer is irrelevant to the admissibility of Jones's testimony. Therefore, Defendants' motion to exclude is denied on this point.

### ii.  Jones's "tsweb.htm" Theory

Next, Defendants challenge Jones's testimony that Gresham may have used the "tsweb.htm" file to transfer MHA documents to a remote computer. Doc. 106 at 7. Jones intends to testify that a file titled "tsweb" was created on September 21, 2012, accessed on September 23, 2012, and could have been used to copy MHA's files to a remote computer. Doc. 102-1 at 89-90. Specifically, Jones's report discovered that a file titled "tsweb.htm," found on Gresham's MHA work computer, had a creation time of 8:14 a.m. September 21, 2012, just days before Gresham terminated his employment at MHA. Doc. 102-1 at 89. The file also had a last-accessed timestamp of 4:08 p.m. September 23, 2012. *Id.* Based on this, Jones's report concludes that the tsweb file was used eight seconds before 447 files on Gresham's work computer were accessed in rapid succession, indicating those files were being copied. Doc. 102-1 at 90. Defendants argue that Jones's testimony is flawed because Jones did not investigate whether the tsweb file was installed by MHA, evidence indicates the tsweb file was not created just before Gresham quit because it was used throughout his employment, the tsweb file is directed to an MHA internal server, and Jones failed to conduct any tests to confirm his report. Doc. 106 at 7-8.

To Defendants' first argument, Jones did not need to investigate whether the tsweb file was installed by MHA. Jones's testimony addresses whether Gresham could have used the tsweb file to transfer information on September 23, 2012. *See* Doc. 102-1 at 89-90. While the source of the tsweb file would shed light on its intended use, Jones is not required to examine its source in order to testify regarding its potential application. Either party is entitled to argue who created the file on Gresham's computer.

Next, Defendants' argument that Gresham used the tsweb file throughout his employment is unavailing. While evidence may indicate that Gresham used tsweb to access files remotely

throughout his employment, Defendants do not dispute that the metadata in the tsweb file states that it was created September 21, 2012 and accessed on September 23, 2012. *See* Doc. 102-1 at 89; Doc. 94-1 at 211. Defendants' contention, at most, raises a fact issue regarding the importance of the metadata. It does not render Jones's testimony inadmissible.

Defendants also argue the tsweb file is directed to an MHA internal server, not any remote computer. Doc. 96 at 21. In contrast, Jones's report claims the tsweb file prompts the user to enter any remote server. Doc. 102-1 at 89. According to Jones, once a user is connected to a remote computer, "the user could copy files on his or her local computer and then paste them to the remote computer's desktop." *Id.* To reach this conclusion, Jones relied on his expertise as well as information from Microsoft's website regarding remote desktop web connections. *Id.* Because Defendants fail to refer to any evidence in the record disputing Jones's methods or conclusions on this point, the Court is unwilling to find Jones's testimony unreliable. *See* Doc. 96 at 20-21; Doc. 106 at 7-8.

Finally, Defendants argue Jones failed to conduct any tests to confirm his conclusions. Defendants take issue with Jones's failure to check the internet history on Gresham's work computer to see if any remote computer was accessed by Gresham at that time. In response, MHA claims the computer's internet history was incomplete as a result of the computer being reimaged. Doc. 101 at 27. Based on this belief, Jones relies on the tsweb file's timestamp showing it was accessed on September 23, 2012 instead of Gresham's internet history. *Id.* Defendants claim Jones should not rely on the tsweb timestamp because, according to Sloves's report, the tsweb file "does not indicate any access to a remote computer. It is just a default screen where a user would begin the process of accessing any remote computers and applications." Doc. 94-1 at 210-11. While Sloves's report suggests that merely accessing the

tsweb file does not automatically cause a connection to a remote computer, the report does not prove that such a connection was impossible. Thus, Defendants have not shown Jones's methods are unreliable. Additionally, Jones may testify despite the lack of evidence that remote access was used to copy information to Gresham's home computer because Jones's testimony primarily addresses how files could be transferred, not to where they were transferred. Therefore, Jones's testimony is admissible.

The Court also denies Defendants' request that Jones be prevented from testifying that some other, unknown method of copying was used. *See* Doc. 106 at 8-9. While Jones has not offered any other theory or analysis regarding how files could have been transferred, Jones's tests reveal that 447 files on Gresham's work computer were accessed within a period of twenty-five seconds on September 23, 2012. Doc. 102-1 at 91-92. Jones's report also states, "when a large number of files are accessed in rapid succession, it is a strong indication that a mass copy event occurred." Doc. 102-1 at 92. In sum, Jones's testimony that the 447 files were copied by some method is not "too great an analytical gap between the data and the opinion proffered." *See Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Jones may testify regarding the likelihood that the files were copied without testifying as to exactly how they were copied.

Based on the foregoing, the Court finds that exclusion of Jones's testimony on copying is unnecessary at this point.

### c.   The Allegedly Deleted and Unrecoverable Files

Finally, Defendants challenge Jones's testimony that certain deleted files were unrecoverable. Doc. 96 at 21. In his report, Jones compared the list of files Gresham deleted to the files MHA's disaster recovery system was able to back up, and determined that the lost files were unrecoverable. Doc. 102-1 at 19-20. Defendants argue that Jones's testimony should be

excluded because Jones is unable to explain why the MHA recovery system failed to back up all of the deleted files. *See* Doc. 96 at 21-22; Doc. 106 at 9. Jones only states that "IT is not a perfect world. We all know we have IT issues with our own computers, blue screen of death." Doc. 94-1 at 76. Therefore, Defendants claim that Jones has no basis to conclude that the specified files are unrecoverable. *See* Doc. 106 at 9. The Court disagrees. Jones may make conclusions based on the attempted methods to recover files and the results of those attempts. Defendants may offer evidence calling Jones's conclusions into doubt. The mere existence of a dispute, however, does not warrant exclusion of Jones's testimony. Accordingly, Defendants' motion to exclude is denied.

### III.  Conclusion

For the foregoing reasons, the Court DENIES Defendants' Motion to Exclude Expert Testimony of Kelly Jones.

**IT IS SO ORDERED.**

Signed this __14th__ day of January, 2015.


JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE